1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **MICHAEL KEITH SMITH,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIV 05-3207 PHX PGR (MEA)** |
| | ) | |
| **ADULT PROBATION DEPARTMENT,** | ) | **REPORT AND RECOMMENDATION** |
| **SOMEONE ELSE,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| _____ | ) | |

**TO THE HONORABLE PAUL G. ROSENBLATT:**

Mr. Michael Smith("Petitioner"), filed a *pro se* Petition for Writ of Habeas Corpus on October 13, 2005, and filed an amended petition (Docket No. 12), with attachments (Docket No. 13), on June 16, 2006. At that time, Petitioner was confined at the Arizona State Hospital in the Arizona Community Protection Treatment Center. Respondents filed an Answer to Petition for Writ of Habeas Corpus Limited to Affirmative Defenses, on November 2, 2006, asserting the petition is moot. See Docket No. 30. On January 12, 2007, Petitioner filed a reply to the response to his habeas petition. See Docket No. 35.

### 1. **Procedural History**

In 1993, pursuant to a written plea agreement, Petitioner pled guilty to attempted sexual assault and attempted

kidnapping.  See Answer to Petition for Writ of Habeas Corpus Limited to Affirmative Defenses ("Answer") (Docket No. 30), Exhs. A-2 & A-3.  Petitioner was sentenced to the presumptive term of ten years imprisonment for the attempted sexual assault conviction and to lifetime probation for the attempted kidnapping conviction.  See id., Exh. A-4.

Petitioner pursued two actions for federal habeas relief from these convictions and sentences in the United States District Court for the District of Arizona; in both cases habeas relief was denied.  See Smith v. Hallahan, 91 CV 00983 PHX WPC, and Smith v. Herman, 98 CV 00371 PHX RGS.[1]  Served in its entirety, Petitioner's ten-year sentence of imprisonment pursuant to his 1993 conviction for attempted sexual assault would have expired in March of 2003.  See Petitioner's attachments to his amended petition at Docket No. 13, Exh. 7.

In April 2000, prior to Petitioner's imminent release from prison for his 1993 conviction resulting from his accrual of earned release credits, a complaint was filed against Petitioner pursuant to Arizona's Sexually Violent Persons ("SVP") Act, codified at Arizona Revised Statutes Annotated sections 36-3701 to 3717, and Petitioner was involuntarily confined at the state hospital.  See Answer, Exh. B.

Petitioner filed a special action in the Arizona state courts asserting the state had breached the 1993 plea agreement by committing him to the state hospital rather than requiring

---

[1] Per the suggestion of Respondents, the Court takes judicial notice of Smith v. Herman, No. 98 CV 00371 PHX RGS, which provides the procedural history of Petitioner's various legal actions through the year 1998.

him to receive outpatient treatment during his sentence of lifetime probation. <u>See</u> <u>id.</u>, Exh. B.  The Arizona Superior Court denied relief on August 29, 2000. <u>See</u> <u>id.</u>, Exh. B. Petitioner appealed this decision to the Arizona Court of Appeals, which denied relief. <u>See</u> <u>id.</u>, Exh. B.

On July 29, 2002, Petitioner filed two actions seeking federal habeas corpus relief, pursuant to 28 U.S.C. § 2254, in this Court.  <u>See</u> <u>Smith v. Messer</u>, 02 CV 1421 PGR SLV and <u>Smith v. Messer</u>, 02 CV 1420 PGR SLV.  In the first action, Petitioner argued his confinement pursuant to Arizona's Sexually Violent Persons Act violated the 1993 plea agreement and, therefore, that his 1993 criminal convictions should be vacated because the government had violated the plea agreement.  In the second federal habeas action, Petitioner asserted his 2000 commitment to the Arizona State Hospital pursuant to the SVP Act violated his federal constitutional rights.  Relief was denied in both of these federal habeas actions in April and September of 2003, respectively.

Approximately three years after his transfer from prison to the Arizona State Hospital, in a civil proceeding occurring in July of 2003, a state jury concluded Petitioner was a "sexually violent person" as that term is defined by Arizona statutes.  <u>See</u> Answer, Exh. C.  Pursuant to the jury's conclusion, Petitioner was committed by the state court to the custody of the Arizona Community Protection and Treatment Center, a facility under the supervision of the Arizona State Hospital.  <u>Id.</u>, Exh. C.

-3-

Prior to the jury trial resulting in the finding Petitioner was a sexually violent person, in December of 2002, the State of Arizona filed a petition to revoke Petitioner's probation, alleging Petitioner had violated a term of probation. Id., Exh. A-7. In March of 2003, the Arizona Superior Court conducted a hearing regarding the petition to revoke probation, at which hearing Petitioner's probation officer testified and evidence was admitted. Id., Exhs. A-8 & A-9. The Superior Court heard testimony that a December 2002 search of Petitioner's room at the Arizona State Hospital revealed sexually stimulating or oriented materials, written in Petitioner's handwriting, which possession violated a condition of his probation. Id., Exh. A-9.

In a decision issued March 19, 2003, Petitioner was found guilty of violating a term of his probation. See id., Exh. A-10. However, the Superior Court did not revoke Petitioner's probation and order him incarcerated; the Superior Court "reinstated" Petitioner on lifetime probation "with conditions identical to those originally imposed." Id., Exh. A-10.

> The Court finds Defendant has violated the conditions of probation previously imposed. IT IS ORDERED reinstating the Defendant on probation for lifetime to date from 4/15/2000 under the supervision of the Adult Probation Department of this Court under the rewritten conditions and regulations as explained by the Court.

Id., Exh. A-10.

The Arizona Court of Appeals affirmed the trial court's violation order on April 1, 2004. Id., Exh. E. The Arizona

1  Supreme Court denied review of the decision on December 1, 2004.

2  Id., Exh. G.

3        On April 29, 2004, the government filed another

4  petition to revoke Petitioner's probation.  Id., Exh. A-12.  In

5  response to the petition, Petitioner filed a motion to dismiss

6  the petition to revoke and a motion to terminate his probation.

7  Id., Exh. A-13.  A hearing regarding the petition to revoke was

8  conducted July 16, 2004.  See id., Exh. A-14.  At that hearing,

9  the trial court granted the government's motion to dismiss this

10 petition to revoke Petitioner's probation.  Id., Exh. A-14.  At

11 a hearing conducted August 18, 2004, the trial court denied

12 Petitioner's motion to have his probation terminated.  See id.,

13 Exh. A-15.

14        Petitioner filed this federal habeas action on October

15 13, 2006, and he filed an amended section 2254 petition on June

16 16, 2006.  On July 19, 2006, the Arizona trial court granted

17 Petitioner's petition for absolute discharge from his civil

18 commitment pursuant to the SVP Act.  Id., Exh. M.  Accordingly,

19 Petitioner is no longer being held in the state hospital

20 pursuant to the SVP Act, nor is Petitioner incarcerated.

21 Petitioner is still serving a sentence of lifetime probation as

22 a consequence of his 1993 conviction for attempted kidnapping.

23        In the instant habeas action, Petitioner does not

24 assert he is entitled to habeas relief because his 1993

25 convictions and sentences were in error.  Neither does

26 Petitioner challenge the fact of his civil commitment, which has

27 now been terminated.  In this action, Petitioner contends the

28 state court's 2003 finding that he violated a term of probation,

-5-

which resulted in his "reinstatement" on lifetime probation, violated his federal constitutional right to due process of law. Petitioner's other claim for relief asserts he was unconstitutionally subject to a sentence of probation in a criminal matter while also being civilly committed pursuant to the SVP.[2]

Respondents argue Petitioner's claims for relief are moot because Petitioner has now been released from civil commitment.   Respondents further argue the claims are moot because Petitioner has not demonstrated any specific, concrete injury in fact resulting from the allegedly unconstitutional revocation of his probation.

---

[2] The Court notes the central theme of Petitioner's other arguments is that the State of Arizona is using criminal laws to "punish" the fact of his civil commitment.   Petitioner raised a similar arguments in two of his prior federal habeas actions.   The assertion that Petitioner's civil commitment is unconstitutional additional punishment for his criminal convictions has been rejected by the United States Supreme Court.   The Supreme Court has concluded an individual's federal constitutional rights regarding double jeopardy and *ex post facto* laws are not violated by their civil commitment pursuant to a state statute governing "sexually violent" persons, which may be based on the fact of their criminal convictions. See Seling v. Young, 531 U.S. 250, 263, 121 S. Ct. 727, 735 (2001); Kansas v. Hendricks, 521 U.S. 346, 371, 117 S. Ct. 2072, 2086 (1997). To the extent Petitioner asserts his criminal adjudication and his civil commitment were constitutionally incompatible, Petitioner may not raise these claims in this habeas action because Petitioner raised the claims in a prior federal habeas petition.   Federal statutes provide a "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."   28 U.S.C. § 2244(b)(1) (2006). Petitioner previously raised his claims that his civil commitment and probation status violated his constitutional rights.   Accordingly, Petitioner's instant petition raising those claims is a second or successive habeas corpus application stating a claim for relief presented in a prior petition and the claims must be denied and dismissed.   See Gonzalez v. Crosby, 545 U.S. 524, 531, 125 S. Ct. 2641, 2647 (2005); Burris v. Parke, 130 F.3d 782, 795 (7th Cir. 1997). Compare Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1168-69 (9th Cir. 2003).

1    Petitioner acknowledges he was released from the
2  custody of the Arizona State Hospital on July 19, 2006.  Reply
3  (Docket No. 35) at 2.  However, "Petitioner moves the court to
4  terminate his probation and to dismiss the Petition to Revoke
5  Probation on State and Federal Constitutional Grounds.  The
6  petition was dismissed, leaving a question whether or not the
7  probation should be terminated."  Id. at 3.  With regard to
8  Respondents' argument that his federal habeas action is moot,
9  Petitioner alleges injuries "in-facts" as a result of the filing
10  of the December 2002 petition to revoke his probation.  Id. at
11  4-5.  Petitioner contends the continuing collateral consequences
12  of the 2002 petition to revoke probation include his continued
13  status on probation.  Id. at 5.  Petitioner also contends there
14  are potentially "various adverse consequences" on his "record"
15  which might arise as a result of the 2002 petition to revoke
16  probation.  Id.[3]

17    **2.  Analysis**

18    Respondents argue Petitioner's claims are moot because
19  Petitioner has been released from confinement.

20    The case-or-controversy requirement of Article III, §
21  2, of the United States Constitution "subsists through all

---

23  [3] Petitioner asserts there is a "high probability of placing
24  Petitioner in the county jails on condition of his probation for any
  period length of time up to one year... Petitioner may finds himself
  in the untenable position of being required to resubmit to psychiatric
25  examination which would then place him in jeopardy of incurring yet
  another petitioner (sic) to revoke probation and a potential prison
26  sentence of 15 years."  Reply at 6.  Additionally, Petitioner contends
  he is being "punished" for receiving SVP treatment, arguing his
27  probation and his status as an SVP are incompatible.  Id. at 8.
  Petitioner contends he is "forced to choose between obtaining the
28  therapy and treatment that the Court had deemed necessary and exposing
  himself to potential criminal liability."  Id. at 7.

stages of federal judicial proceedings ... The parties must continue to have a personal stake in the outcome of the lawsuit." Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78, 110 S. Ct. 1249, 1253-54 (1990) (internal quotations omitted).  If it appears that the Court is without the power to grant the relief requested by a habeas petitioner, then the petition is moot. See Picrin-Peron v. Rison, 930 F.2d 773, 775 (9th Cir. 1991).  If a habeas action seeking the petitioner's release from confinement is adjudicated after the petitioner has been released, "some concrete and continuing injury" or "collateral consequence" of the challenged decision must exist for the habeas action to be maintained. See Spencer v. Kemna, 523 U.S. 1, 7, 118 S. Ct. 978, 982 (1998).

Part of the relief that Petitioner requested in his amended habeas petition, i.e., his release from his then-potentially indefinite civil detention pursuant to the SVP Act, can no longer be granted by the Court.  Therefore, to the extent Petitioner asserts his civil detention pursuant to the SVP Act violated his constitutional rights, his amended petition is moot. Cf. id., 523 U.S. at 8-16, 118 S. Ct. at 983-87 (finding moot a habeas petition challenging parole revocation procedures after the petitioner was released from prison); Lane v. Williams, 455 U.S. 624, 633, 102 S. Ct. 1322, 1327 (1982); Fendler v. United States Bureau of Prisons, 846 F.2d 550, 555 (9th Cir. 1988) (holding that a section 2241 petition becomes moot once the petitioner, seeking release from parole rather than challenging the validity of his original conviction, is

released from parole).[4]

However, Petitioner also seeks relief in the form of the Court declaring that his status on probation violates his constitutional rights.     Petitioner asserts the 2003 "reinstatement" of his sentence of lifetime probation was improper, *inter alia*, because he was deprived of due process in the 2003 proceedings to revoke his probation.  Petitioner also contends that the state courts improperly denied his motion to terminate his probation in 2004.

The Court agrees with Respondents that Petitioner's allegation his 2003 probation violation proceedings violated his constitutional rights is moot because there are no collateral consequences attaching to the decision Petitioner violated a term of his probation. As noted by Respondents, the finding Petitioner had violated a term of his probation, resulting in a "reinstatement" on probation, did not prevent Petitioner's release from the state hospital after his SVP commitment, one of the collateral consequences asserted by Petitioner. Petitioner's allegation that he might suffer future collateral consequences from the violation decision is not a sufficient allegation of collateral consequences to avoid the conclusion the claim is moot.  See <u>Spencer</u>, 523 U.S. at 15, 118 S. Ct. at

---

[4] In certain circumstances a claim that the petitioner's commitment was a violation of his constitutional rights might not be moot. <u>Cf.</u> <u>Carty v. Nelson</u>, 426 F.3d 1064, 1071 (9th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 2037 (2006) (interpreting California's SVP law and concluding a habeas petition challenging an initial commitment pursuant to the SVP law was not moot upon the petitioner's release due to the collateral risk of the petitioner's incarceration if he failed to comply with SVP reporting requirements). However, in this action Petitioner challenges the probation revocation, not the proceedings regarding his civil commitment.

987; <u>Wilson v. Terhune</u>, 319 F.3d 477, 480-81 & n.5 (9th Cir. 2003) (concluding the possibility a parole revocation will result in future harm in future criminal proceedings is too speculative or tenuous to bely mootness).[5]

　　　　　The use of the term "reinstatement" by the probation violation court appears to have misled Petitioner into believing he was not on probation at the time of the violation and revocation hearing.  Petitioner was on probation throughout the entire time he was detained at the state hospital both before and after the jury concluded he should be committed as a SVP.  As a resolution of the probation violation proceeding, the state court "reinstated" Petitioner on probation, however, Petitioner was not ever *not* on probation.  The state court's terminology indicates a finding that Petitioner was not to be incarcerated, or taken into the custody of the state prison or jail system, rather than remain at the state hospital, as a result of his violation of probation.  See <u>Arizona v. Cofield</u>, 210 Ariz. 84, 86-87, 107 P.3d 930, 932-33 (Ct. App. 2005).[6]

---

[5] In <u>Spencer</u> and <u>Lane v. Williams</u> the Supreme Court held the presumption that a wrongful criminal conviction always has continuing collateral consequences, such that habeas corpus relief would be available, does not extend to parole or probation revocation hearings. <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Wilson v. Terhune</u>, 319 F.3d 477, 480-81 & n.5 (9th Cir. 2003); <u>Diaz v. Duckworth</u>, 143 F.3d 345 (7th Cir. 1998).

[6]

Cofield is not entitled to presentence incarceration credit for his time spent detained as an alleged SVP because he was not "in custody" within the meaning of A.R.S. § 13-709(B). "Arizona court decisions have consistently interpreted the 'in custody' requirement of this statute to mean actual or constructive control of prison or jail authorities." <u>State v. Reynolds</u>, 170 Ariz. 233, 235, 823 P.2d 681, 683 (1992)[].

1    Accordingly, the claim that Petitioner was deprived of
2  due process in his probation violation hearing is moot because
3  the finding of a violation did not result in additional
4  punishment, requirements, or sanctions on Petitioner.

5    Additionally, Petitioner's allegation his right to due
6  process was violated in the probation violation proceedings
7  because the court allowed hearsay statements as foundation to
8  admit documents, i.e., the documents Petitioner was prohibited
9  from possessing, may be denied on the merits.  It is arguable
10 that this claim would even provide a basis for federal habeas
11 relief.   Individuals in probation revocation proceedings are
12 not entitled to the full array of constitutional protections
13 afforded a defendant in criminal proceedings.  See Morrissey v.
14 Brewer, 408 U.S. 471, 480, 92 S. Ct. 2593, 2600 (1972); United
15 States v. Hall, 419 F.3d 980, 985 (9th Cir. 2005).   An
16 individual faced with the revocation of their probation is
17 constitutionally entitled only to notice and a right to be heard
18 and a neutral fact-finder.  Black v. Romano, 471 U.S. 606,
19 611-12, 105 S. Ct. 2254, 2257-58 (1985); Gill v. Ayers, 342 F.3d
20 911, 918-19 (9th Cir. 2003); Myers v. Miller-Stout, 117 Fed.
21 App. 542, 543 (9th Cir. 2004), cert. denied, 544 U.S. 928
22 (2005).  The federal courts have also determined that the
23 revocation of a petitioner's parole or probation does not
24 violate due process if "some evidence supports the decision."
25 Caswell v. Calderon, 363 F.3d 832, 839 (9th Cir. 2004), quoting
26 McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).

27   Petitioner was afforded sufficient due process during
28 the hearing regarding his probation violation.  Compare McBride

-11-

v. Johnson, 118 F.3d 432, 437 (5th Cir. 1997) (finding a due process violation where hearsay evidence regarding the violation was the *sole* evidentiary basis for revocation).  Additionally, as noted by Respondents, Petitioner has not shown any prejudice or injury arising from the finding he had violated a term of his probation.  Technical errors alone in a probation revocation process do not rise to the level of a constitutional violation; a petitioner must show prejudice before the Court can find a due process violation.  See Williams v. Johnson, 171 F.3d 300, 307-08 (5th Cir. 1999) (affirming the denial of habeas relief when the alleged error in refusing to allow a parole officer to testify at the parole revocation hearing was harmless); Linton v. Walker, 26 Fed. App. 381, 383-84 (6th Cir. 2001); White v. United States Parole Comm'n, 856 F.2d 59, 61 (8th Cir. 1988) (rejecting a claim of defective notice because the petitioner had not shown prejudice).

Furthermore, the Arizona Court of Appeals' decision affirming the finding of a probation violation and concluding the admission of hearsay in a probation revocation proceeding did not violate Petitioner's right to due process was not clearly contrary to established federal law.  See Ryan v. State of Mont., 580 F.2d 988, 993 (9th Cir. 1978) (concluding the use of hearsay and illegally seized evidence in a probation revocation proceeding did not violate the probationer's constitutional rights).  See also United States v. Simmons, 812 F.2d 561, 564 n.4 (9th Cir. 1987); United States v. Pattman, 535 F.2d 1062, 1063-64 (8th Cir. 1976).  Because the state court's decision evaluating the merits of Petitioner's federal habeas

due process claim was not clearly contrary to clearly established federal law, the Court may not grant habeas relief on the merits of Petitioner's due process claim. See 28 U.S.C. § 2254(d) (1994 & Supp. 2006).

Furthermore, Petitioner did not raise, in the state courts of appeal, his claim that the 2004 denial of his motion to terminate his probation violated his constitutional rights. Accordingly, Petitioner has not exhausted this claim in the state courts and relief may not be granted on the merits of the claim. See 28 U.S.C. § 2254(b)(1)(A) (1994 & Supp. 2006).

### 3.   Conclusion

Petitioner's claim that his 2003 probation violation proceedings violated his right to due process is moot because Petitioner has not established any collateral consequences arising from the decision he violated a term of his probation. Additionally, the state court's conclusion that Petitioner's right to due process was not violated in this proceeding was not clearly contrary to established federal law. Petitioner did not exhaust any claim regarding the 2004 decision denying his motion to terminate probation in the Arizona Court of Appeals and, accordingly, relief may not be granted on this unexhausted claim. Furthermore, Petitioner's claims that his civil commitment and probation status violated his constitutional rights were raised in a previous federal habeas petition and, accordingly, the claims must be dismissed as presented in the instant action for relief.

**IT IS THEREFORE RECOMMENDED** that Mr. Smith's Petition for Writ of Habeas Corpus be **dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues.  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 4th day of April, 2007.

_____
Mark E. Aspey
United States Magistrate Judge

-14-